# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Holly Wotring,                                        :
                Petitioner           :
                                     :
                 v.                    :   No. 1551 C.D. 2016
                                       :   Submitted: April 13, 2017
Unemployment Compensation                            :
Board of Review,                                     :
                Respondent           :

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
                   HONORABLE ANNE E. COVEY, Judge
                   HONORABLE JAMES GARDNER COLINS, Senior Judge

**OPINION NOT REPORTED**

MEMORANDUM OPINION BY
JUDGE COHN JUBELIRER               FILED: July 26, 2017

       Holly Wotring (Claimant), pro se, petitions for review of an Order issued August 12, 2016, by the Unemployment Compensation (UC) Board of Review (Board), affirming the Referee's decision that found Claimant ineligible for UC benefits under Section 402(e) of the UC Law[1] for willful misconduct. For the reasons discussed below, we affirm.

       Claimant worked as a full-time Administrative Assistant and Safe Crisis Management (SCM) Trainer for Building by Design (Employer) from April 25, 2013, until April 4, 2016. The Employer terminated her employment on April 5, 2016, for refusing to perform her job duties. After filing a claim for UC benefits,

---

       [1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(e).

Claimant received a Notice of Determination, which found Claimant was discharged for willful misconduct for not fulfilling her job responsibilities of providing staff training and, therefore, was ineligible for benefits. Claimant petitioned for review, and a hearing was held before a Referee, who affirmed the determination of ineligibility. Claimant appealed to the Board, which subsequently affirmed the decision, adopting and incorporating all findings of fact and conclusions of law made by the Referee. The findings of fact adopted by the Board are as follows:

3. The employer has an Internet usage policy, of which the claimant was aware, in which an employee may use the Internet for work-related items.

4. On October 9, 2015, the employer placed a block on the claimant's use of the Internet due to violations of the Internet use policy.

5. On October 13, 2015, the claimant received a verbal warning to discuss unsatisfactory work performance and time management issues.

6. In December 2015, the claimant received a verbal warning for failure to submit paperwork in a timely fashion, which caused the employer to lose two clients and staff to lose work hours.

7. The employer offered the claimant help to improve her work performance and oversight of necessary tasks, but the claimant refused.

8. On February 22, 2016, the claimant was placed on a 30-day performance improvement plan, where she was required to maintain updated staff clearances, completeness in client files and complete training properly.

9. The claimant was made aware that she had 30 days to improve her work performance or she would be discharged.

10. The claimant did not meet the goals under the performance improvement plan.

11. On March 23, 2016, the employer notified the claimant that she would be discharged effective April 23, 2016, due to unsatisfactory work performance.

12. The employer gave the claimant one-month notice in order to give her an opportunity to secure other employment and to have her complete staff training which was scheduled for 10 days in April 2016.

13. On April 1, 2016, the claimant continued to misuse company equipment when she used company email to discuss a reprimand with staff and a personal friend outside the company.

14. On April 4, 2016, when the clinical director arrived, the claimant was clearing her desk and loading her car with her belongings.

15. On April 4, 2016, the clinical director told the claimant that she no longer had to report to work. The claimant was aware that she was required to complete the scheduled staff training and that she would be paid her full salary to do so.

16. On April 4, 2016, the claimant advised the employer that she would not complete the scheduled trainings because she was unavailable to do so.

17. On April 5, 2016, which is a day of scheduled training, the claimant sent an email indicating that she was ill.

18. On April 5, 2016, the claimant completed an application for employment with East Pennsboro School District, despite notifying the employer that she could not report to work that day because she was ill.

19. On April 5, 2016, the employer received documentation from East Pennsboro School District showing that the claimant applied for employment on April 5, 2016.

20. On April 5, 2016, the claimant was discharged for refusing to perform her job duties.

(Board Order; Referee Decision, Findings of Fact (FOF) ¶¶ 3-20.)

In the Referee's Decision, which was adopted by the Board, the Referee acknowledged that the Claimant had been scheduled for discharge effective April 23, 2016, due to unsatisfactory work performance—not willful misconduct. But the Referee also found that before the scheduled termination date, Claimant refused to perform her assigned trainings and failed to establish good cause for doing so, which was the reason for her discharge on April 5, 2016. Based upon the Claimant's refusal to perform the training, the Referee and Board concluded the Employer had met its burden of proving Claimant's willful misconduct and that Claimant was ineligible for benefits under Section 402(e) of the UC Law.

On appeal,[2] Claimant's relevant arguments are essentially that: (1) the Findings of Fact are not supported by substantial evidence; and (2) the Board erred as a matter of law in concluding that Claimant's actions constituted willful misconduct because she was ill on April 5, 2016.

### A. Substantial Evidence

We first address whether the Board's findings of fact are supported by substantial evidence. "Substantial evidence is relevant evidence upon which a reasonable mind could base a conclusion." *Johnson v. Unemployment Comp. Bd. of Review*, 502 A.2d 738, 740 (Pa. Cmwlth. 1986) (citing *Clark v. Unemployment Comp. Bd. of Review*, 471 A.2d 1309, 1310 (Pa. Cmwlth. 1984)). In reviewing whether the Board's findings are supported by substantial evidence, this Court

---

[2] In reviewing orders issued by the Board, this Court's standard of review is "limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether necessary findings of fact are supported by substantial evidence." *Reading Area Water Auth. v. Unemployment Comp. Bd. of Review*, 137 A.3d 658, 661 n.6 (Pa. Cmwlth. 2016).

must examine testimony in the light most favorable to the party that prevailed before the Board. *Id.* (citing *Dickey v. Unemployment Comp. Bd. of Review*, 466 A.2d 1106, 1107 (Pa. Cmwlth. 1983)). We are to give the party prevailing before the Board, here, the Employer, the benefit of any inference that can be logically and reasonably drawn from the evidence. *Id.* The Board's findings of fact are binding on appeal as long as the record, taken as a whole, contains substantial evidence to support them. *Serrano v. Unemployment Comp. Bd. of Review*, 149 A.3d 435, 439 (Pa. Cmwlth. 2016) (citing *Penflex, Inc. v. Bryson*, 485 A.2d 359, 365 (Pa. 1984)). In addition, it is within the Board's discretion to "make its own determinations as to witness credibility and evidentiary weight." *Id.* (citing *Peak v. Unemployment Comp. Bd. of Review*, 501 A.2d 1383, 1388 (Pa. 1985)). The Board's credibility determinations and resolution of conflicts in evidence "are not subject to re-evaluation on judicial review." *Id.*

Claimant disputes the Board's finding that she told Employer's clinical director that she refused to fulfill her duties as a SCM trainer. At the hearing, Employer's clinical director testified that on the morning of April 4, 2016, he arrived at the place of employment to find Claimant in the process of emptying her desk and office and loading her things into her car. He explained to Claimant that she was not required to come to work anymore but that she was nevertheless required to conduct the scheduled SCM trainings. The clinical director further testified that at this time Claimant told him that she would not complete the trainings as scheduled because she was "unavailable" to do so. (R. Item 12, Hr'g Tr. at 14-15, 22.) Claimant disputes the clinical director's version of events. She testified that she did not clean out her desk until after the clinical director took her keys, and that she did so simply because her personal items were no longer safe.

5

Claimant also testified that she never told the clinical director that she would not complete the trainings. The Board specifically discredited Claimant's testimony on this matter, adopting the clinical director's version of events. (Board Order; Referee Decision, FOF ¶¶ 14-16.) Claimant essentially asks us to accept her version of events; however, we are not permitted to re-evaluate the Board's credibility determinations. The clinical director's credited testimony provides substantial evidence to support the Board's finding. Therefore, because it is within the Board's discretion to make credibility determinations, the finding that Claimant told the clinical director on April 4 that she would not complete the job training, as required, is binding on this Court.[3]

## B.    Willful Misconduct

We next address Claimant's argument that the Board erred as a matter of law in concluding that her actions constituted willful misconduct. Because it is a legal conclusion, this Court may fully review whether an employee's particular actions

---

[3] In her appeal to the Board, which Claimant attached to her Petition for Review, Claimant had contested Findings of Fact Nos. 5-10, 18, and 20. To the extent Claimant, by attaching her appeal to the Board, is attempting to challenge those findings on appeal to our Court, she is not entitled to relief for a number of reasons. First, to dispute many of the findings, she attempts to rely on new evidence or arguments that were not introduced or raised at the Referee's hearing. Because they were not before the Board, we are not able to consider them on appeal. *Umedman v. Unemployment Comp. Bd. of Review*, 52 A.3d 558, 565 (Pa. Cmwlth. 2012). Second, several of the findings she challenges are immaterial to our determination. For instance, because Findings of Fact Nos. 5-10 relate to prior conduct that resulted in Claimant being placed on a performance improvement plan for poor work performance, they have no effect on our analysis of whether Claimant's **refusal to perform trainings** in April amounted to willful misconduct. Even though immaterial, the credited evidence provides substantial evidence to support the Board's findings. In fact, Claimant's own testimony supports some of the findings. (*See, e.g.*, R. Item 12, Hr'g Tr. at 17 (wherein Claimant concedes she applied for another job on April 5, 2016, which supports Finding of Fact ¶ 18).)

amount to willful misconduct. *Smith v. Unemployment Comp. Bd. of Review*, 967 A.2d 1042, 1046 (Pa. Cmwlth. 2009). Section 402(e) of the UC Law disqualifies employees from receiving unemployment benefits during any week in which they have been discharged because of willful misconduct. 43 P.S. § 802(e). Though not defined by statute, our Supreme Court has defined "willful misconduct" as:

> (a) wanton or willful disregard for an employer's interests; (b) deliberate violation of an employer's rules; (c) disregard for standards of behavior which an employer can rightfully expect of an employee; or (d) negligence indicating an intentional disregard of the employer's interest or an employee's duties or obligations.

*Grieb v. Unemployment Comp. Bd. of Review*, 827 A.2d 422, 425 (Pa. 2003). The employer has the burden of proving that the claimant's discharge was due to the claimant's willful misconduct. *Walsh v. Unemployment Comp. Bd. of Review*, 943 A.2d 363, 368 (Pa. Cmwlth. 2008). Refusal to follow an employer's directive without good cause constitutes willful misconduct. *Kretsch v. Unemployment Comp. Bd. of Review*, 476 A.2d 1004, 1006 (Pa. Cmwlth. 1984). If an employer meets its burden of showing willful misconduct, the claimant must then show good cause to justify such conduct. *Henderson v. Unemployment Comp. Bd. of Review*, 77 A.3d 699, 719 (Pa. Cmwlth. 2013) (citing *McKeesport Hosp. v. Unemployment Comp. Bd. of Review*, 625 A.2d 112, 114 (Pa. Cmwlth. 1993)). An employee has established good cause if her actions are justified or reasonable under the circumstances. *Id.* (citing *Chapman v. Unemployment Comp. Bd. of Review*, 20 A.3d 603, 607 (Pa. Cmwlth. 2011)). Both the reasonableness of an employer's demand and the reasonableness of a claimant's refusal should be considered in determining whether claimant's actions constitute willful misconduct. *Dougherty v. Unemployment Comp. Bd. of Review*, 686 A.2d 53, 54 (Pa. Cmwlth. 1996).

7

In *Dougherty*, this Court affirmed the Board's denial of unemployment benefits to a nurse who was discharged by his employer after refusing to work with patients with Acquired Immunodeficiency Syndrome (AIDS). This Court held that "only when an employee's refusal to [follow] such directive directly threatens that person's health or safety will we refuse to hold that the employee's actions were willful misconduct." *Id.* (citing *McLean v. Unemployment Comp. Bd. of Review*, 383 A.2d 533, 537 (Pa. 1978)). This Court reasoned that "extraordinary circumstances" are typically required to justify an employee's refusal of an employer's directive. *Id.* (citing *Gwynedd Square Ctr. v. Unemployment Comp. Bd. of Review*, 656 A.2d 562, 566 (Pa. Cmwlth. 1995)).

Here, Claimant similarly refused a directive from her employer to perform trainings. Claimant does not properly offer any basis for this Court to find that the training assignment itself was unreasonable.[4] We discern no "extraordinary circumstances" or unreasonableness in requiring someone employed as the "Safe Crisis Management Trainer" to perform Safe Crisis Management trainings. Such refusal to perform a reasonable directive from the Employer exhibits both disregard for the Employer's interests and disregard for behavior that the Employer can rightfully expect of an employee. The burden, therefore, shifts to Claimant to show good cause for her refusal.

Claimant argues that her absence on April 5, 2016, was justified and reasonable because she was ill.[5] This Court has held that "absence from work

---

[4] In her brief, Claimant mentions that the trainings as scheduled violated "regulations of JKM Training, Inc.," without explanation of what the regulations are or whether non-compliance with such regulations speak to reasonableness. Regardless, this argument is not properly preserved because Claimant first raises it in her brief to this Court.

[5] In support of this argument, Claimant relies on The Fair Work Act of 2009, which appears to be an Australian law with no applicability here.

8

because of sickness does not constitute willful misconduct unless the illness is not properly reported as required by the employer's work rules." *Gardner v. Unemployment Comp. Bd. of Review*, 372 A.2d 38, 40 (Pa. Cmwlth. 1977) (citing *Unemployment Comp. Bd. of Review v. Kells*, 349 A.2d 511, 513 (Pa. Cmwlth. 1975) ("Absence from work because of sickness, of course, is not willful misconduct.")).  At the Referee hearing, Claimant introduced a note showing that she was seen by her doctor on April 5; however, she acknowledges that she never submitted the note to the Employer.  Moreover, on April 4, **the day before** Claimant fell ill, the credited evidence is that she verbally refused to conduct the SCM trainings and was found clearing her personal belongings from her office. (Board Order; Referee Decision, FOF ¶¶ 14, 16.)  Claimant provides no basis of good cause for such a refusal on that date.  Therefore, Claimant fails to meet her burden of establishing good cause for refusal to conduct the SCM trainings.

Because the facts relied on by the Board are supported by substantial evidence, and because they support the conclusion that Claimant's actions constituted willful misconduct, we discern no error.  Accordingly, we affirm.

_____

**RENÉE COHN JUBELIRER,** Judge

9

**IN THE COMMONWEALTH COURT OF PENNSYLVANIA**

Holly Wotring,                                  :
                          Petitioner            :
                                                :
                    v.                          :        No. 1551 C.D. 2016
                                                :
Unemployment Compensation                       :
Board of Review,                                :
                          Respondent            :

# **O R D E R**

**NOW**, July 26, 2017, the Order of the Unemployment Compensation Board of Review, dated August 12, 2016, is **AFFIRMED**.


_____

**RENÉE COHN JUBELIRER,** Judge